FILED

2009 Aug-11  AM 10:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JONATHAN D. TAYLOR,      )
                               )
     Plaintiff,         )
                               )
vs.                       )    Case No.  CV-08-S-836-M
                               )
MICHAEL J. ASTRUE,     )
Commissioner, Social Security  )
Administration,          )
                               )
     Defendant.        )

## MEMORANDUM OPINION AND ORDER

Claimant, Jonathan Taylor, commenced this action on May 12, 2008, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits.  Claimant moved to remand the case to the Commissioner for consideration of additional evidence.[1]  Claimant also submitted a brief in support of his entitlement to benefits.[2]  For the reasons stated herein, the court finds that the matter should not be remanded to the Commissioner, and that the Commissioner's decision to deny claimant's benefits is due to be affirmed.

---

[1]Doc. no. 8.

[2]Doc. no. 9.

# I. MOTION TO REMAND

## A.    Riverview Regional Medical Center Records

Claimant first argues that the case should be remanded to the Commissioner because records from Riverview Regional Medical Center covering the period from January 19 through November 13, 2002 were omitted from the administrative record. On August 17, 2005, the date of claimant's first administrative hearing, claimant's attorney sent additional medical records to the ALJ.  The attorney's cover letter stated, in pertinent part:

> Records from Riverview Regional on 1/19/02 note ear pain and nose pain after being hit in the right side of his face.  Clinical impression was acute otalgia, nasal contusion, and head contusion.  On 2/18/02 records note complaints of back pain radiating into right leg with tingling sensation, hypertension, asthma, and kidney stones.  Clinical impression was acute myofascial strain – lumbar.  Records on 2/21/02 note back pain.  He had an MRI of the lumbar spine which revealed mild lower lumbar spondylosis with left paracentral disc herniation L5-S1. On 3/29/02 records note back pain, hypertension, and asthma.  Clinical impression was lumbar spine radiculopathy with paracentral L5-S1 disc herniation.  Records on 5/6/02 note back pain radiating down left leg and hypertension.  On 6/15/02 records note exacerbation of back pain, hypertension, and herniated disc.  Impression was chronic low back pain.  On 11/12/02 records note chronic seizures, seizing and admitted to hospital, asthma, and back pain.  He was unconsciousness [sic], unresponsive, shaking, stopped breathing, and confused.  Records on 11/17/02 note dizziness, light headedness, seeing spots in front of eyes, and seizure on 11/12/02.  Started on Dilantin on 11/13/02.  Records also note trouble walking/off balance, sense of confusion, distorted vision, headache, trouble remembering, depressed affect, and having hallucinations that people are there that aren't.[3]

---

[3]Tr. at 367.

Claimant attached the missing medical records to his motion to remand.[4]  Upon review of these records, the court agrees with claimant that they were not included in the administrative record sent from the Commissioner to the court in connection with this case.

It appears, however, that the ALJ *did* consider at least some of the Riverview Regional Medical Center records from the January through November 2002 period before he rendered his administrative decision.  The ALJ stated:

> The evidence of record shows that the claimant was periodically seen at Riverview Regional Medical Center from *January 2002* to May 2005.  Treatment records note the claimant variously complained of chronic severe low back pain and abdominal flank pain, as well as seizures.  On *February 22, 2002*, treatment records note a lumbar spine MRI revealed mild lower lumbar spondylosis with left paracentral disc herniation at L5-S1.[5]

Furthermore, even if the ALJ did not consider *all* of the Riverview records from January through November of 2002, it does not follow that the case must be remanded.  The Eleventh Circuit has provided a three-prong standard for district courts to apply when a claimant seeks a remand on the basis of new evidence.  The claimant must demonstrate: (1) the evidence is new and not cumulative; (2) the evidence is material (*i.e.,* relevant and probative, such that a reasonable possibility exists that it would change the administrative results); and (3) good cause exists for

---

[4]*See* doc. no. 8, at Exhibit A.

[5]Tr. at 29 (emphasis supplied).  The ALJ referenced the February 2002 MRI a second time later in his decision.  Tr. at 36.

the failure to submit the evidence at the administrative hearing.  *See Keeton v. Department of Health and Human Services,* 21 F.3d 1064, 1068 (11th Cir. 1994); *Cannon v. Bowen,* 858 F.2d 1541, 1546 (11th Cir. 1988); *Caulder v. Bowen,* 791 F.2d 872, 877 (11th Cir. 1986).[6]  Here, even assuming that the evidence is new and not cumulative (*i.e.,* that the ALJ did not in fact consider the evidence in rendering his decision), and that there is good cause for claimant's failure to submit the evidence at the administrative hearing, claimant cannot demonstrate that the omitted evidence is sufficiently material that it would likely have changed the administrative result.

There are several reasons for that conclusion.  First, all of the omitted records date back well prior to June 1, 2003, the alleged onset date of claimant's disability. Indeed, the earliest of the records are from January 2002, more than one year prior to

---

[6]Further, Sentence Six of 42 U.S.C. § 405(g) states as follows:

*The court may*, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may *at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding*; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis supplied).

the onset date.  It does not necessarily follow that the records are completely irrelevant to the determination of disability, especially considering that a finding of disability can be based upon the claimant's inability to perform gainful work activity for a continuous period of twelve months.  *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability," in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months").  Even so, the time gap between the dates of the records and the alleged date of onset does impact the materiality of the records.

Further, a review of the omitted records does not indicate that their consideration would likely have caused the ALJ to find claimant disabled.  Claimant first points to Riverview records from January 19, 2002, which indicate that he was treated for ear and nose pain after an assault.  However, a CT scan performed on January 20, 2002 revealed no significant abnormalities, and there is no indication that the ear and nose injuries caused any significant functional limitations.

Claimant also points to records from a February 18, 2002 emergency room visit during which he complained of back pain, as well as the results of an MRI performed on February 22, 2002.  However, the treatment notes indicate that claimant's pain on

that occasion was only moderate, and that it was caused by lifting a heavy object at work.   Further, the MRI revealed only mild lower lumbar spondylosis with left paracentral disc herniation at L5-S1.

Next, claimant points to records from March 29, May 6, and June 15, 2002, which reflect emergency room visits due to complaints of back pain.  However, these records reveal only claimant's subjective complaints of pain and the attending physician's notes indicating treatment with medication and referral to an orthopedic specialist.   The records do not indicate any limitations on claimant's ability to function that are more severe than those already acknowledged by the ALJ.  The only thing these records do is indicate that the impairments existed during the relevant time period. That is not material to the determination of disability, however, because the ALJ considered other medical records from other health care providers during this same time period, and found that they did not support a finding of disability.[7]

Finally, claimant points to records from a November 12, 2002 emergency room visit for treatment after a seizure.  However, these records do not indicate that the seizure caused any permanent damage or resulted in any significant functional limitation.  Furthermore, the ALJ considered other evidence of claimant's seizure disorder and did not find that the disorder supported a finding of disability.[8]

---

[7]*See* Tr. at 30-31.

[8]*See* Tr. at 29-30, 34.

In summary, claimant has not demonstrated that he can satisfy all of the requirements for a remand for consideration of new evidence with regard to the Riverview Regional Medical Center records.[9]

## B.   Favorable Decision from February 23, 2009

Claimant also argues that remand is warranted because the Commissioner issued a fully favorable decision on February 23, 2009, holding that claimant was disabled based upon a subsequent application, and that he was entitled to benefits as of October 25, 2006.[10]   The Commissioner issued an amended (but still fully favorable) decision on March 13, 2009, changing the claimant's onset date to October 26, 2006.[11]   Claimant does not cite any authority or make any argument to support his claim that the case should be remanded due to the subsequent favorable decision.   He only states that "[i]t is common practice for the Defendant to request a remand when a Claimant has received benefits by a subsequent application for benefits when the

---

[9]Claimant also argues that remand is warranted because portions of the administrative record have been altered to reflect that the Riverview Regional Medical Center records began on 11-11-02, not 1-1-02.  *See* Tr. at 366, 403.  It is true that someone handling the administrative file handwrote the numeral "1" to the type-written summary of dates for the Riverview records.  The court presumes that was done because the administrative record did not actually contain the medical records from January to November of 2002, and the person handling the file assumed the designation of January 11, 2002 as the start date for the Riverview records was a typographical error.  In any event, claimant has not given any reason why the alteration of these two pages justifies remand.  The court has already acknowledged — and the Commissioner has not disputed — that the Riverview records from January 2002 to November 2002 are missing from the administrative record in this case.

[10]*See* doc. no. 15 (claimant's "Submission in Support of Remand").

[11]*See* Exhibit 2 to doc. no. 17 ("Submission of Additional Evidence in Support of Remand").

first denial of benefits is in Federal Court."[12]  First of all, here, defendant did not request a remand; claimant did.  Furthermore, the court can discern no reason why a decision issued in 2009, and finding claimant disabled as of October 26, 2006, would have any bearing on the issue presented in this case: *i.e.,* whether claimant was disabled as of June 1, 2003.  Accordingly, remand is not warranted based upon the Commissioner's subsequent fully favorable decision.

## C.    Vocational Disability Evaluation Report by Dr. Guy Walker

Finally, claimant asserts that the case should be remanded based upon a Vocational Disability Evaluation Report prepared by Dr. Guy Walker, a vocational rehabilitation expert, on December 27, 2008.[13]  However, claimant has made no argument that the report is new or material, or that good cause exists for his failure to submit the report at the administrative hearing.  *See, e.g., Keeton,* 21 F.3d at 1068 (requiring that all of those factors must be demonstrated before a case will be remanded for consideration of additional evidence).  Upon review of Dr. Walker's report, the court determines that it has no bearing on plaintiff's condition between June 1, 2003, the alleged onset date in this case, and October 25, 2006, the date of the ALJ's decision.  Accordingly, the case will not be remanded for consideration of Dr. Walker's report.

---

[12]Doc. no. 15, at 1.

[13]*See* doc. no. 17.

In summary, there is no basis for remand of claimant's claim to the Commissioner, and claimant's motion for remand will be denied.

## II. REVIEW OF THE COMMISSIONER'S DENIAL OF BENEFITS

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts: (1) that the ALJ's finding that claimant has the residual functional capacity to perform sedentary work was not supported by substantial evidence; (2) that the ALJ failed to consider all of claimant's severe impairments, and failed to consider his impairments in combination; (3) that claimant meets the requirements of Listing 12.04 and/or 12.06; (4) that the ALJ failed to state adequate reasons for finding claimant's testimony regarding his subjective complaints of plain to be not entirely credible; and (5) that the ALJ's decision was based upon an incomplete hypothetical question to the vocational expert. Upon review of the record, the court

concludes these contentions are without merit.

## A.    Residual Functional Capacity Finding

Claimant first argues that the ALJ's residual functional capacity finding was not supported by substantial evidence because it was conclusory and in violation of Social Security Ruling 96-8p, which states, in pertinent part, as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

> Symptoms.  In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

> •    Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;

> •    Include a resolution of any inconsistencies in the evidence as a whole; and

> •    Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.  In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations. . . .

Medical opinions.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight.  If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.  (See SSR 96-2p, "Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.").

SSR 96-8p.

The ALJ followed these directives when he rendered his administrative decision.  He cited medical and nonmedical evidence to support his conclusions, weighed the inconsistencies in the record, and discussed claimant's ability to perform sustained work activity on a regular and continuing basis.  He also discussed medical source opinions in the record, and he provided an explanation whenever a medical opinion was not adopted.[14]

---

[14]*See* Tr. at 35-40.

11

Claimant also appears to assert that the ALJ erred by finding claimant was able to perform work at a medium exertional level, and by finding that claimant had no functional limitations. The record does not support these arguments, as the ALJ actually found claimant suffered from significant functional limitations and was only able to perform sedentary work activity.[15]

Finally, claimant asserts that the ALJ's decision is not supported by substantial evidence because it was not based on a functional capacities evaluation from a treating or examining physician. Claimant simply is not correct on this point. The record contains a Clinical Assessment of Pain Form[16] and a Physical Capacities Form[17] from Dr. Carlos Ganuza, who examined claimant on August 19, 2004.[18] The ALJ considered Dr. Ganuza's reports in his administrative decision.[19] The record also contains a Medical Source Opinion Form (Mental) completed Dr. Christopher Randolph, a psychiatrist, on October 10, 2005.[20] Dr. Christopher examined claimant on October 4, 2005,[21] and the ALJ considered Dr. Randolph's evaluation in his administrative decision.[22] Thus, it cannot be said that the record did not contain a

---

[15] *See* Tr. at 35.

[16] Tr. at 722-23.

[17] Tr. at 724-26.

[18] *See* Tr. at 716.

[19] Tr. at 32, 37-40.

[20] Tr. at 550-51.

[21] Tr. at 547-49.

[22] Tr. at 33-34, 38.

functional capacities evaluation.

## B.     Severe Impairments and Combination of Impairments

Next, claimant argues that the ALJ failed to consider all of claimant's severe impairments, and that he failed to consider all of claimant's impairments in combination.

The ALJ found that claimant suffers from the following severe impairments: "dysthymia, opiod dependence, substance induced mood disorder, anti-social personality disorder, sequela of drug use, hypertension, a small lumbar disc herniation, and questionable seizures."[23]   Claimant asserts that the ALJ failed to consider Dr. Wilson's diagnosis of Social Anxiety Disorder and Depression, and that the ALJ

> violated SSR 96-8p[24] in not considering the effect of the claimant's low
> back pain, left thigh pain, radiculopathy, bulging disc, degenerative joint
> disease, myositis, seizures, panic attacks, social anxiety disorder, major

---

[23]Tr. at 29.

[24]Social Security Ruling 96-8p provides, in pertinent part that

[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p.

depression, trouble sleeping, low energy, pain and numbness to left hand, flank pain, recurrent hematuria, renal colic, and asthma.[25]

As an initial matter, many of these impairments actually were considered by the ALJ. For example, claimant says that the ALJ neglected to consider his low back pain, left thigh pain, radiculopathy, bulging disc, or degenerative disc disease, but the ALJ found that claimant's "small lumbar disc herniation" was a severe impairment. Claimant also complains that the ALJ failed to consider his panic attacks, social anxiety disorder, major depression, trouble sleeping, and low energy, but the ALJ found that claimant's dysthymia, substance induced mood disorder, and anti-social personality disorder were severe impairments. Claimant also complains that the ALJ failed to consider his seizures, but the ALJ found that claimant's "questionable seizures" were a severe impairment.

Furthermore, claimant does not explain why any of these conditions should be considered "severe" under Social Security regulations. A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). There is no evidence that any of the conditions *not* mentioned by the ALJ would impose significant limitations on claimant's ability to do basic work activities.

Finally, even if the ALJ should have considered some of claimant's other

---

[25]Doc. no. 9 (claimant's brief), at 21-22.

impairments to be severe, his failure to do so is not error, because the record reflects that the ALJ considered all of claimant's impairments in combination when evaluating claimant's disability status.  *See* 20 C.F.R.  §§ 404.1545(e), 416.945(e) (stating that, when the claimant has any severe impairment, the ALJ is required to assess the limiting effects of *all* of the claimant's impairments — including those that are not severe — in determining the claimant's residual functional capacity).  In summarizing the process for evaluating disability claims, the ALJ acknowledged that he was required to "consider *all* of the claimant's impairments, including impairments that are not severe."[26]  The ALJ also found that claimant did not have "an impairment *or combination of impairments* that meets or medically equals one of the listed impairments,"[27] and that "claimant's moderate mental illnesses, *separately or in combination*, do not prohibit him from performing basic work activities."[28]  Finally, a general review of the administrative opinion reflects that the ALJ considered all of claimant's impairments in combination, including those impairments he did not find to be "severe."  For example, the ALJ mentioned claimant's complaints of low back

---

[26]Tr. at 28 (emphasis supplied).

[27]Tr. at 35 (emphasis supplied).

[28]Tr. at 40 (emphasis supplied).

and flank pain,[29] degenerative disc disease,[30] bulging disc,[31] trouble sleeping,[32] seizures,[33] radiculopathy,[34] and depression.[35]

In summary, the court concludes that the ALJ properly considered all of claimant's severe impairments, and that he also properly considered all of his impairments, including impairments that are not severe, in combination.

## C.   Listing 12.04 and Listing 12.06

Claimant also asserts that the ALJ erred in finding that he did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  Claimant asserts that he satisfies the requirements of Listings 12.04 and 12.06.

### 1.   Listing 12.04

Listing 12.04, addressing affective disorders, requires proof of:

> 1.  Depressive syndrome characterized by at least four of the following:
>
>> a.  Anhedonia or pervasive loss of interest in almost all activities; or
>> b.  Appetite disturbance with change in weight; or

---

[29]Tr. at 29-36.

[30]Tr. at 31.

[31]Tr. at 30, 36-37.

[32]Tr. at 31.

[33]Tr. at 31-32, 34-35, 39.

[34]Tr. at 32.

[35]Tr. at 31-35, 37-38.

16

    c.  Sleep disturbance; or
    d.  Psychomotor agitation or retardation; or
    e.  Decreased energy; or
    f.  Feelings of guilt or worthlessness; or
    g.  Difficulty concentrating or thinking; or
    h.  Thoughts of suicide; or
    i.  Hallucinations, delusions, or paranoid thinking.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.04A (listings) (the so-called "A criteria").

Additionally, a claimant must show at least two of the following:

    1.  Marked restriction of activities of daily living; or
    2.  Marked difficulties in maintaining social functioning; or
    3.  Marked difficulties in maintaining concentration, persistence, or pace; or
    4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.04B (listings) ("B criteria").  Alternatively,

claimant can demonstrate a

    [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.  Repeated episodes of decompensation, each of extended duration; or
    2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3.  Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

17

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.04C (listings) ("C criteria").

There is medical evidence to support satisfaction of the "A criteria" of this listing.  Dr. David Wilson submitted a report of a consultative psychological evaluation conducted on October 27, 2004.  He noted that claimant suffers from panic attacks, does not do much during the day, has difficulty concentrating and sleeping, lacks energy and motivation, feels worthless because of his situation, and has considered suicide.[36]  Other medical evidence also confirms the existence of panic attacks[37] and insomnia.[38]

There is no evidence, however, that claimant can satisfy the "B" or "C criteria" of the listings.  No treating or examining medical provider has noted the presence of marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated, extended episodes of decompensation.  There also is no evidence of more than minimal limitations over a two-year period that resulted in repeated, extended episodes of decompensation, a marginal adjustment level that would preclude any increase in mental demands or change in environment, or the need to live within a highly supportive living environment for more than a year.  *See Wilson*

---

[36]Tr. at 358-62.

[37]Tr. at 344.

[38] Tr. at 490, 494, 542.

*v. Barnhart,* 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.") (citing 20 C.F.R. § 404.1525(a)-(d)).  Dr. Wilson did state, in a conclusory fashion, that claimant's "level of anxiety and depression would . . . make it very difficult for him to work at this time."[39]  This conclusory statement does not satisfy the listing, however, because the determination of disability is not a medical opinion, but an issue reserved for the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1); *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986).  Furthermore, Dr. Wilson indicated that claimant's condition could improve within the next twelve months if he received proper treatment.[40]  Dr. Wilson rendered an almost identical opinion in a second report dated November 12, 2007.[41]  This second report does not provide any more conclusive medical evidence with regard to claimant's satisfaction of the "B criteria" or "C criteria" of the listings.  Finally, there is no evidence from any *other* medical provider to support satisfaction of those criteria.  In a report dated October 4, 2003, Dr. Christopher Randolph stated that he saw no evidence of psychiatric disability, and recommended vocational rehabilitation to evaluate

---

[39]Tr. at 362.

[40]*Id.*

[41]Tr. at 838.

claimant's ability to return to work.[42]  Dr. Randolph also completed a Medical Source

Opinion Form (Mental), on which he indicated no limitations in mental functioning.[43]

### 2.    Listing 12.06

Listing 12.06, addressing anxiety related disorders, requires proof of

> 1.   Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>> a.  Motor tension; or
>> b.  Autonomic hyperactivity; or
>> c.  Apprehensive expectation; or
>> d.  Vigilance and scanning; or
> 2.   A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
> 3.   Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
> 4.   Recurrent obsessions or compulsions which are a source of marked distress; or
> 5.  Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.06A (listings).  Additionally, a claimant

must show at least two of the following:

> 1.   Marked restriction of activities of daily living; or
> 2.   Marked difficulties in maintaining social functioning; or
> 3.   Marked difficulties in maintaining concentration, persistence, or pace; or
> 4.   Repeated episodes of decompensation, each of extended duration.

---

[42]Tr. at 549.

[43]Tr. at 550-51.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.06B (listings).  Alternatively, a claimant can demonstrate that his medically documented conditions have resulted "in complete inability to function independently outside the area of one's home."  20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.06C (listings).

Claimant has presented evidence of recurrent panic attacks, thus satisfying the "A criteria" of the listing.  Even so, there is no medical evidence to support satisfaction of the "B criteria" or "C criteria" of the listings.  No treating or examining medical provider has noted the presence of marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated, extended episodes of decompensation.  There also is no evidence that claimant is unable to function independently outside his home.  As discussed above, Dr. Wilson's conclusory statements about claimant's inability to work do not constitute evidence of disability.

In summary, there is no medical evidence to support satisfaction of either Listing 12.04 or 12.06.  Accordingly, the ALJ did not err in finding that claimant is not disabled under any of the listings.

**D.     Credibility**

Next, claimant argues that the ALJ failed to state adequate reasons for finding claimant's subjective complaints to be not entirely credible.  To demonstrate that pain

or another subjective impairment renders him disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ properly applied these legal principles.  He found that claimant suffered from an underlying impairment (lumbar disc disease) that could reasonably be expected to produce some pain and other limitations, but he nonetheless concluded that

> substantial evidence of record does not confirm disabling pain or other limitations arising from the claimant's lumbar disc condition, nor does it support a conclusion that the objectively determined lumbar disc condition is of such severity that it could reasonably be expected to give rise to disabling pain and other limitations.[44]

The ALJ also found that "claimant's statements concerning the intensity, persistence

---

[44]Tr. at 37.

and limiting effects of [his] symptoms are not entirely credible."[45]  *See Marbury v.*

*Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's

complaints of pain, the ALJ may reject them as not creditable, and that determination

will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513,

517 (11th Cir. 1984)) (emphasis supplied).

The ALJ adequately articulated the reasons for these conclusions, and his

conclusions are supported by substantial medical evidence of record.  For example,

the ALJ properly found that claimant's subjective complaints were not substantiated

by objective clinical findings.  A February 22, 2002 MRI of claimant's lumbar spine

showed only *slight* degenerative dessication of the L5-S1 disc, *minimal* posterior disc

bulge at L4-5, and *minimal to mild* posterior hypertrophic change.[46]  Another lumbar

MRI on May 9, 2002 revealed only a *mild* disc protrusion at L5-S1, with no canal

stenosis or nerve impingement.[47]  A May 3, 2004 MRI revealed only a *minimal* T12-

L1 disc bulge without focal herniation or significant spinal canal stenosis, and only

a *small* disc hernation at L5-S1, without significant thecal sac or nerve root

compression.[48]  Clinical examination findings also did not support a finding of

disabling limitations.  Dr. Paul Matz, an examining neurosurgeon, noted on October

---

[45]Tr. at 36.

[46]Tr. at 96.

[47]Tr. at 122.

[48]Tr. at 470.

27, 2003 that claimant straight leg raising tests were negative, and that he had normal sensory and motor function.  Dr. Matz stated that claimant's condition did not warrant surgery or the use of epidural steroids.[49]  An April 23, 2003 progress note from Quality of Life Health Services reflected tenderness at claimant's lumbar spine, but normal range of motion, negative leg raising exam, and normal neurological exam.[50] Other medical records also note negative straight leg raisings, only occasional tenderness to palpitation, and normal range of motion.[51]

Based on the foregoing, the ALJ did not err in evaluating claimant's credibility and his subjective complaints of pain.

## E.    Hypothetical Question to Vocational Expert

Claimant also argues that the ALJ's decision was not based upon substantial evidence because the ALJ did not include all of claimant's impairments and limitations in his hypothetical question to the vocational expert.  During the administrative hearing, the ALJ asked the vocational expert to assume

> a hypothetical individual for the claimant's age, education, professional background.  Assume such individual can perform work at a light exertional level as defined in the regulations.  Assume such an individual would require a sit-stand option.  However [INAUDIBLE] unskilled work, not requiring satisfaction of production quotas.  That would limited duty [sic], primarily with objects and not [INAUDIBLE].

---

[49]Tr. at 133.

[50]Tr. at 113.

[51]*See, e.g.,* Tr. at 102-36, 143-356, 369-94, 466-72, 640-70.

24

> Would be limited to work not exposing him to unprotected heights, or requiring work around unprotected heights, and [INAUDIBLE] machinery or [INAUDIBLE]. Would there be jobs that such an individual could perform [INAUDIBLE]? Well, first of all, there would be no past work, since all the past work was at least a medium exertional level. So would there be other jobs [INAUDIBLE] could do?[52]

The vocational expert responded that light work would be precluded because most of the available jobs would require interaction with the public. The ALJ then asked the vocational expert to assume the same hypothetical individual, except that the individual could only perform work at a sedentary exertional level. The vocational expert responded that jobs would be available for such an individual in significant numbers in the national economy.[53] The ALJ also asked the vocational expert to evaluate claimant's ability to work, assuming that all of the limitations imposed by Dr. Ganuza's report of August 19, 2004 were accurate. The vocational expert responded that, if all of Dr. Ganuza's assessments were accurate, then claimant would be unable to perform any work due to moderately severe or severe pain. The vocational expert also stated that, if all of claimant's testimony were taken as true, then claimant would be unable to work due to mental illness and seizure disorder.

Claimant complains that the ALJ failed to include any reference to lower back pain, depression, or effects of medication in the hypothetical question. It is true that

---

[52]Tr. at 893-94 (notations of inaudible portions of the testimony in original).
[53]Tr. at 894.

the ALJ did not explicitly mention those impairments in the hypothetical question. Even so, the ALJ did consider all of those impairments in determining that claimant retained the residual functional capacity to perform sedentary work, and the ALJ asked the vocational expert to assume an individual limited to sedentary work in the hypothetical question. Thus, the hypothetical question implicitly encompasses the impairments claimant mentions.

Claimant also suggests that the ALJ erred in not adopting the vocational expert's assessment that an individual with the impairments imposed by Dr. Ganuza, or with the impairments subjectively described by claimant, could not perform any work. However, the ALJ was not required to fully accept claimant's testimony regarding his impairments, and, as set forth above, he adequately articulated a basis for finding claimant to be less than fully credible.

The ALJ also was not required to fully accept Dr. Ganuza's assessment, and he adequately articulated his basis for discrediting Dr. Ganuza's opinion. Dr. Ganuza examined claimant on August 19, 2004. He noted that claimant complained of lumbar back pain, radiating into his legs, and exacerbated by standing, walking, bending, squatting, and prolonged sitting. On examination, claimant's gait and motor function were normal, and he had no pain to palpitation in any area except his lumbar spine. His lumbar spine was painful to palpitation and motion, especially flexion and

extension, but the Lasegue maneuver did not elicit any pain.[54] Dr. Ganuza concluded that claimant had "a significant herniated disc with the typical lumbar pain radiating to the legs. He had a good response to the epidural blocks and that might help him temporarily. It is possible that the herniation of the disc may have been aggravated by the seizures." On a Clinical Assessment of Pain form, Dr. Ganuza noted that pain was present and found to be irretractable and virtually incapacitating to claimant, that physical activity would increase claimant's pain to such an extent that bed rest and/or medication would be necessary, that claimant's prescribed medication would cause significant side effects that would limit the effectiveness of work duties or the performance of everyday tasks, that claimant's pain and/or medication would cause him to be totally restricted and unable to function at a productive level of work, that little improvement was likely for claimant's condition, and that the treatments claimant received had been successful in treating his pain. Dr. Ganuza also stated that claimant might need surgery in the future. Dr. Ganuza completed a Physical Capacities Form stating that claimant could not sit, stand, or walk for even one continuous hour during a work day, and that he could sit for a total of only four hours a day and stand and walk for a total of only one hour each day. Dr. Ganuza noted that these limitations were attributable to claimant's herniated disc. He also indicated that

---

[54]The Lasegue maneuver distinguishes sciatica from disease of the hip joint, because in sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. *Dorland's Illustrated Medical Dictionary* 1700 (30th ed. 2003).

claimant could never lift or carry any more than ten pounds, could frequently use his arms and hands to push and pull, and could never use his legs and feet to push and pull. Claimant could never bend, squat, or crawl, and could only occasionally climb, but he could frequently perform reaching movements. Claimant suffered moderate restriction of activities involving unprotected heights, moving machinery, and driving automotive equipment. He suffered mild restriction of activities involving changes in temperature and humidity, but suffered no restriction of activities involving dust, fumes, or gases. Claimant could frequently use his hands for simple grasping, fine manipulation, and fingering or handling. Dr. Ganuza noted that claimant's impairments could be expected to last more than twelve months.[55]

The ALJ discredited Dr. Ganuza's findings because they are "inconsistent with and not supported by his own examination findings, and also are inconsistent with and not supported by the other evidence of record."[56] Specifically, the ALJ noted that, during Dr. Ganuza's examination,

> claimant was well nourished and developed, fully conscious and oriented in only moderate distress, that he was able to stand on heels and toes, squat about 3/4 before experiencing pain, that his motor, sensory, coordination, cranial nerves, mentation, and reflexes were all normal, that he had no synovitis in any of his peripheral joints, no pain to palpitation or motion on any of his peripheral joints, and no pain and tenderness of the cervical and thoracic spines. And, although Dr.

---

[55]Tr. at 715-728.

[56]Tr. at 37.

> Ganuza reported the claimant was tender to palpitation and painful to motion in flexion and extension of the lumbar spine, [claimant] further reported that the Lasegue's maneuver elicited no pain.[57]

The ALJ also noted that Dr. Ganuza referenced the results of an MRI claimant brought with him to the hearing, but the description of the MRI results did not match any that were in the record.  All of these conclusions were supported by substantial evidence.

In conclusion, the ALJ included all of claimant's credible impairments in the hypothetical question to the vocational expert.  Furthermore, the ALJ's conclusion, based upon the vocational expert's response to that hypothetical question, that claimant is able to perform sedentary work existing in significant numbers in the national economy was supported by substantial evidence.

### III. CONCLUSION AND ORDERS

Consistent with the foregoing, claimant's motion to remand is DENIED.  Further, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.  The Clerk is directed to close this file.

DONE this 11th day of August, 2009.

---

[57]*Id.*

_____
United States District Judge